IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Bonchon U.S.A., Inc., | |
| Plaintiff, | |
| v. | Case No. 22 CV 02658 |
| Aaron Allen & Associates, LLC, | Honorable Nancy L. Maldonado |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bonchon U.S.A., Inc. ("Bonchon") filed this suit bringing claims against Defendant Aaron Allen & Associates ("AAA") for breach of contract and unjust enrichment. (Dkt. 14 ¶¶ 31–41.) AAA filed a motion to dismiss Bonchon's Amended Complaint in its entirety, arguing that Bonchon failed to state a claim for breach of contract—specifically, for anticipatory repudiation of a contract—and a claim for unjust enrichment. (Dkt. 15.) For the reasons stated below, the Court grants AAA's motion in part and denies it in part. Bonchon's unjust enrichment claim is dismissed without prejudice, but its breach of contract claim may proceed. Bonchon may amend its complaint for a second time by April 19, 2024.

**Background**

The operative Amended Complaint (Dkt. 14)[1] alleges the following facts, which the Court accepts as true for the purpose of considering the instant motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Bonchon is a corporation, organized under New York law and with a principal place of business in Dallas, Texas, that owns and operates quick serve restaurants. (Dkt. 14 ¶ 1, 6.) AAA is a limited liability company that does business in

---

[1] Bonchon amended its Complaint after AAA filed an initial motion to dismiss. (*See* Dkt. 10; Dkt. 14.)

1

Chicago, Illinois and whose members are all believed to be citizens of Illinois. (*Id.* ¶ 2–3.) AAA provides management consulting services, specializing in the food service and hospitality industries. (*Id.* ¶ 7.)

In March of 2022, representatives from AAA and Bonchon met to discuss a potential consulting assignment, and AAA subsequently drafted and delivered a written proposal (the "Proposal") to Bonchon "describing the proposed services, expectations, deliverables, and workflow sequence." (*Id.* ¶ 8; *see* Dkt. 14-1.) Shortly after Bonchon received the Proposal, the parties executed an "Agreement for Services" (the "Agreement"). (Dkt. 14 ¶ 9; *see* Dkt. 14-2.)

Section 1.1 of the Agreement outlines AAA's promised services under the Agreement. (Dkt. 14-2 at 2.)[2] AAA agreed to provide expert restaurant consultation services, and specifically, deliver an assessment of existing gaps and missed opportunities in addition to recommendations and strategies for achieving "greater control and consistency for operational performance across the system's corporate locations." (Dkt. 14 ¶ 10; Dkt. 14-2 at 2.) AAA was to review Bonchon's data and conduct industry research, covering potential topics such as the "competitive landscape, consumer trends, value creation planning, performance optimization, tech-enabled innovations, and guest experience and associate engagement initiatives." (Dkt. 14 ¶ 12; Dkt. 14-2 at 2.) The Agreement also states that, upon the project's completion, "AAA will outline actual steps to increase restaurant-level profitability and improve operations for both full service and limited service Bonchon restaurants." (Dkt. 14. ¶ 14; Dkt. 14-2 at 2.) AAA agreed to provide a report and recommendations after gathering this information, doing research, and completing site visits ("estimated 1–4 days in market"). (Dkt. 14 ¶ 13; Dkt. 14-2 at 2.)

---

[2] Page numbers are taken from CM/ECF headers.

Section 1.3 of the Agreement states that the estimated project length—which Bonchon refers to as the "Performance Period"—is "approximately 30–45 days." (Dkt. 14 ¶ 15; Dkt. 14-2 at 1.) Moreover, Section 1.2 of the Agreement states that AAA's work "will be guided in the spirit and intent of the original proposal shared on March 17, 2022, and clarification conversations." (Dkt. 14 ¶ 16; Dkt. 14-2 at 1.) Section 3.1 of the Agreement states: "This Agreement shall commence upon the Effective Date and shall remain effective for One Hundred and Eighty (180) days from the Effective Date." (Dkt. 14-2 at 3.) Section 3.2 permits parties to terminate the Agreement "with a written notice given 30 days in advance." (*Id.*) In the alternative, Section 3.2.2 provides a 10-day opportunity for a party to cure a breach of its material responsibilities or obligations. (*Id.*; Dkt. 14-2 at 3.)

In exchange for AAA's services, Bonchon promised to pay AAA a total fee of $100,000, which included both "professional service fees and production expenses." (Dkt. 14 ¶ 11; Dkt. 14-2 at 2.) Section 3.3 of the Agreement states:

> In the event of termination, AAA shall be compensated for the Services performed through the date of termination in the amount of (a) any advance payment, (b) a prorated portion of the fees due, or (c) hourly fees for work performed by AAA or AAA's agents as of the date of termination, whichever is greater; and Client shall pay all Fees incurred through and up to date of cancellation.

(Dkt. 14-2 at 3.) Bonchon paid the entire fee to AAA on or about March 21, 2022. (Dkt. 14 ¶ 11.)

Bonchon alleges that AAA failed to fulfill its promises to Bonchon under the Agreement by failing to conduct any of the work covered by the "WEEK TWO," "WEEK THREE," or "WEEK FOUR" phases of the Proposal. (*Id.* ¶¶ 17–19.) Bonchon further alleges that AAA did not visit a single Bonchon-operated restaurant by April 22, 2022, despite the Proposal and Agreement's mention of site visits. (*Id.* ¶¶ 20–22.) Instead, AAA "ordered food for delivery from a franchised (not Bonchon-operated) Bonchon restaurant through a third-party delivery service." (*Id.* ¶ 22.)

Bonchon repeatedly requested that AAA provide the services promised under each week of the proposal and conduct the services promised under the Agreement. (*Id.* ¶ 21.) AAA, however, failed and refused to meet with Bonchon representatives and comply with these requests. (*Id.* ¶¶ 23–25.) According to Bonchon, AAA's responses to Bonchon's requests for the promised work product and other services under the Agreement "were erratic, hostile, threatening, and unprofessional." (*Id.* ¶ 26.)

Bonchon terminated the Agreement in writing on April 22, 2022, and demanded return of the $100,000 fee it paid to AAA, less a reasonable amount for costs and expenses incurred by AAA. (*Id.* ¶ 27) Bonchon alleges that it would have been futile to comply with the Agreement's cure provision due to AAA's repeated refusal to timely perform; its "erratic, extremely hostile, and unprofessional responses"; and the fact that it would not have been able to perform the remaining services promised within the approximately 13 days left in the estimated project length. (*Id.* ¶ 29.) AAA refused to return Bonchon's fees. (*Id.* ¶ 30.)

In light of AAA's refusal, Bonchon initiated the instant civil lawsuit. Bonchon brings a breach of contract claim and an unjust enrichment claim, seeking judgment against AAA and recovery of its $100,000 fee plus any other relief to which it may be entitled. AAA filed this instant motion to dismiss Bonchon's Amended Complaint in its entirety, arguing that Bonchon has failed to state a claim for both counts.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's

4

favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

AAA seeks dismissal of the Amended Complaint in its entirety and argues that Bonchon has failed to state any claim for relief. (*See* Dkt. 15.) The Court will address each count separately below. Ultimately, the Court concludes that Bonchon's breach of contract claim may proceed, but Bonchon's unjust enrichment claim is dismissed without prejudice.

### I. Count I – Breach of Contract Claim

Before the Court reaches the merits of AAA's Rule 12(b)(6) arguments, the Court will first address the parties' disagreements over two contract interpretation issues. Specifically, the parties dispute: (1) whether the Agreement incorporates the Proposal; and (2) the relevant performance period under the Agreement. The Court will subsequently turn to the issue of whether Bonchon has stated a claim for relief.

#### a. Interpretation of Section 1.2 of the Agreement

Both parties contend that the Agreement is unambiguous on whether it incorporates the Proposal. (Dkt. 15 at 5; Dkt. 18 at 8.) The relevant provision under the Agreement states, "[W]ork will be guided in the spirit and intent of the original proposal." (Dkt. 14-2 at 2.) AAA argues that

this language unambiguously does not incorporate the Proposal, (Dkt. 15 at 5.) Bonchon argues that it unambiguously does. (Dkt. 18 at 8.)

A court's review of a plaintiff's complaint extends to "documents attached to the complaint, documents that are critical to the complaint and referred to in it." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Thus, if a plaintiff attaches a contract and refers to it in his or her complaint, a court may independently examine the contract. *See, e.g.*, *Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL 228244, at *3 (N.D. Ill. Jan. 22, 2013). "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). The Court should initially look to the language of the contract and its plain and ordinary meaning to determine the parties' intent, and the Court must construe the contract as a whole, "viewing each part in light of the others." *Id.*

If the court concludes that the contract is unambiguous, then the court may interpret it as a matter of law at the motion to dismiss stage, but if the court finds the contract is ambiguous, its interpretation is a question of fact. *Id.*[3] A contract is ambiguous "if the language used is reasonably or fairly susceptible to having more than one meaning, even when considering the disputed language in the context of the entire agreement." *Illinois ex rel. Hammer v. Twin Rivers Ins. Co.*, No. 16 C 7371, 2017 WL 2880899, at *4 (N.D. Ill. July 5, 2017) (citing *Int'l Capital Grp., LLC v. Starrs*, No. 10 C 3257, 2011 WL 66027, at *3 (N.D. Ill. Jan. 10, 2011)).

The Court finds that "guided in the spirit and intent" is susceptible to a multitude of reasonable meanings, and it is facially unclear whether that phrase expressly incorporates the terms of the Proposal. Under Illinois law, a contract incorporates a document by reference only if the

---

[3] AAA claims that Bonchon failed to allege ambiguity. (Dkt. 19 at 2.) Ambiguity is, however, a question of law for the Court. *Cincinnati Ins. Co. v. Gateway Const. Co.*, 865 N.E.2d 395, 398 (Ill. App. Ct. 2007).

parties intended the incorporation; "such intent to incorporate must be 'clear and specific.'" *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798, 802 (N.D. Ill. 2016) (quoting *188 LLC v. Trinity Indus., Inc*., 300 F.3d 730, 736 (7th Cir. 2002)). The Proposal includes both general and detailed expectations for the project, and it is unclear which set of expectations the Agreement is referring to. For example, in the "What to Expect" section of the Proposal, AAA tells Bonchon that they can expect "[p]assionate and dedicated focus to delivering on intended outcomes" and "[h]igh standards of integrity, professionalism, sincerity, sensitivity to unique dynamics." (Dkt. 14-1 at 9.) But in the "Workflow Sequencing" section, the Proposal includes specific benchmark tasks to be completed each week. (*Id.* at 8–9.) The Agreement does not clarify if the services to be provided should be guided by the Proposal's loftier, more aspirational goals or its more tactical objectives. Moreover, while the Agreement refers to "clarification conversations," Bonchon does not provide any factual allegations describing the content of these conversations. (Dkt. 14-2 at 2.) For these reasons, the Court concludes that the language in the Agreement is ambiguous as to whether it incorporates the Proposal and further factual development is needed to resolve this ambiguity.

### b. Interpretation of the Performance Deadline

The parties also dispute which provision of the Agreement defines the performance period. AAA asserts that the performance period is stated in Section 3.1 under Section 3, Term and Termination, which states, "This Agreement shall commence upon the Effective Date and shall remain effective for One Hundred and Eighty (180) days from the Effective Date." (Dkt. 19 at 4; Dkt. 14-2 at 3.) Bonchon, in contrast, argues that Section 1.3, which refers to an estimated project length of approximately 30–45 days, is the appropriate performance period. (Dkt. 14 ¶ 15; Dkt. 14-2 at 2.) Bonchon further argues that even if Section 1.3 is too approximate to be the intended

performance deadline, the Court would have to determine "a reasonable 'approximate' period for performance," which is a question of fact inappropriate for the pleading stage. (Dkt. 18 at 11.)

The Court concludes that it is premature to resolve the disputed performance period. First, the issue of whether the Agreement incorporates the Proposal may bear on this dispute: if the Proposal's weekly deadlines were meant to be incorporated into the Agreement, those deadlines may clarify the intended performance period.

Second, AAA somewhat contradicts itself here. On the one hand, AAA argues that the Agreement does not entail "a definitive time for performance" and states no fixed deadline. (*See* Dkt. 15 at 8; Dkt. 19 at 4.) On the other hand, AAA states that "the only true deadline" is the 180-day deadline set forth in Section 3.1. (Dkt. 19 at 4.) When a contract is silent or ambiguous on the deadline for performance, a reasonable time will be implied by the trier of fact based on evidence provided by the parties. *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 829 (7th Cir. 2020). If AAA takes the stance that the Agreement does not state a definitive time for performance, then the Court must inquire into the "reasonable time for performance"; this question is ill-suited for disposition on a 12(b)(6) motion. *See Fletcher v. OneWest Bank, FSB*, No. 10-CV-4682, 2012 WL 5199632*,* at *3 (N.D. Ill. Oct. 22, 2012*)* ("What constitutes a reasonable time for performance is a question of fact.").

But if AAA means that the Agreement has a performance deadline, but it is set by Section 3.1 (which states the Agreement's effective length), rather than Section 1.2 (which states the estimated project length), then this argument does not affect whether Bonchon has stated a claim for anticipatory repudiation. Bonchon alleges that it terminated the Agreement before both the deadline set by Section 1.2 and Section 3.1. Resolution of the intended performance period may bear on the ultimate success of Bonchon's anticipatory repudiation claim and its futility argument

(both of which are discussed below). For the purposes of AAA's 12(b)(6) motion, however, it is sufficient that Bonchon alleges that AAA anticipatorily breached before either purported deadline.

### c. Failure to State a Claim – Breach of Contract Claim

Having found that these preliminary contract interpretation issues cannot be resolved as a matter of law at this stage, the Court turns to the merits of whether Bonchon has stated a claim for breach of contract. Bonchon alleges that "AAA's refusal and failure to timely provide the Services to Bonchon under the Agreement constituted a breach of the Agreement." (Dkt. 14 ¶ 33.) Bonchon's main theory for its breach of contract claim appears to be that Bonchon anticipatorily repudiated the agreement. (*See id.* ¶ 29.)

AAA challenges Bonchon's breach of contract claim on several grounds. First, AAA contends that it did not breach the Agreement because AAA's performance was not due when Bonchon terminated the Agreement. (Dkt. 15 at 6–7.) Second, AAA argues that Bonchon did not adequately plead anticipatory repudiation because its allegations concerning AAA's responses to Bonchon's requests do not meet the requisite standard for anticipatory breach. (*Id.* at 8–9.) AAA further argues that Bonchon has not pled that there is a fixed performance deadline and that the Agreement's conditions could have been fulfilled, as required for anticipatory repudiation claims. (*Id.* at 8–9.) Third, AAA argues that Bonchon itself failed to perform under the Agreement by not complying with the Agreement's cure provision. (*Id.* at 7.) Finally, AAA argues that Bonchon cannot establish damages, as Section 3.3 of the Agreement specifies compensation for services performed if the other party terminates the Agreement, and it permits AAA to keep the fee. (*Id.* at 10–11.)

### i. Breach of Contract

The Court will first address whether Bonchon has stated an ordinary breach of contract claim. A plaintiff bringing a breach of contract claim must show "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by the plaintiff; (3) the breach of the contract by the defendant; and (4) a resulting injury to the plaintiff." *D'Attomo v. Baumbeck*, 36 N.E.3d 892, 910–11 (Ill. App. Ct. 2015).

Although Bonchon focuses on its anticipatory repudiation theory, the Court finds that Bonchon has adequately pled a breach of contract claim. The parties do not dispute that there is a valid and enforceable contract. (*See* Dkt. 15 at 6.) Bonchon alleges that it fully performed under the Agreement. (Dkt. 14 ¶¶ 11, 34.) Bonchon alleges that AAA breached the Agreement by failing to provide the services outlined under Weeks Two through Five in the Proposal. (*Id.* ¶¶ 17–23.) Whether there has been a breach of contract—and the materiality of that breach—is generally a question of fact. *Timan v. Ourada*, 972 N.E.2d 744, 751 (Ill. App. Ct. 2012); *Mohanty v. St. John Heart Clinic*, 866 N.E.2d 85, 72 (Ill. 2006). As discussed above, the Court finds that the Agreement's incorporation of the Proposal is ambiguous. If the weekly deadlines of the Proposal are part of the Agreement, then AAA may have breached the Agreement by not timely performing under the Proposal. In that case, Bonchon was injured by AAA's alleged breach because it paid the full Agreement fee but did not receive the services promised according to the timeline outlined in the Proposal. (*Id.* ¶ 11.) The overlapping issues of whether the Agreement incorporates the Proposal and whether AAA breached the Agreement ultimately require further factual development. AAA's motion to dismiss Bonchon's breach of contract claim is therefore denied.

### ii. Anticipatory Breach Claim

Next, the Court will consider whether Bonchon has adequately pled anticipatory breach by AAA. "An anticipatory breach, also called anticipatory repudiation, is a manifestation by one party to a contract of an intent not to perform its contractual duty when the time comes for it to do so even if the other party has rendered full and complete performance." *Tower Invs., LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 1032 (Ill. App. Ct. 2007). The party bringing the anticipatory repudiation claim must show that this manifestation of an intent not to "render the promised performance when the time fixed for it in the contract arrives" is "definite and unequivocal." *Carpo Serv. Centers, Inc. v. A.P. Parts Int'l, Inc.*, No. 98 C 2278, 2000 WL 12720, at *10 (N.D. Ill. Jan. 4, 2000) (quoting *First Nat'l Bank & Trust Co. of Evanston v. First Nat'l Bank of Skokie*, 533 N.E. 2d 8, 12 (Ill. App. Ct. 1988)). "When one party repudiates a contract, the nonrepudiating party is excused from performing." *Tower Invs., LLC*, 864 N.E.2d at 1032. "Whether an anticipatory repudiation has occurred is a question of fact." *Arlington LF, LLC v. Arlington Hosp., Inc.*, 637 F.3d 706, 713 (7th Cir. 2011).

AAA argues that Bonchon has not adequately alleged anticipatory repudiation because Bonchon did not allege that AAA unequivocally manifested an intent not to perform. (Dkt. 15 at 8.) Bonchon argues that it adequately alleged that AAA anticipatorily breached the Agreement because AAA's failure to perform "virtually any of the services" under the Agreement was a "constructive breach." (Dkt. 18 at 13) (citing Dkt. 14 ¶ 29).

The Court concludes that Bonchon has provided sufficient allegations to state a claim for anticipatory breach of a contract. It is reasonable to infer that AAA's allegedly "erratic, hostile, threatening, and unprofessional responses," (Dkt. 14 ¶ 26), were definite manifestations of AAA's intent not to perform. AAA cites *Shields Pork Plus v. Swiss Valley Agricultural Service* in support

11

of its contention that Bonchon must plead language that is "sufficiently clear and distinct to be reasonably interpreted to mean that the promisor cannot or will not perform." (Dkt. 15 at 9) (quoting 767 N.E. 2d 945, 954–55 (Ill. App. Ct. 2002)). AAA, however, omits that the court in *Shields Pork Plus* was ruling on an appeal from a bench trial.[4]

Moreover, it is reasonable to infer that AAA's conduct, apart from its "erratic, hostile, threatening, and unprofessional" statements to Bonchon, manifested an intent not to perform the contract. (Dkt. 14 ¶ 29.) Anticipatory repudiation is not limited to statements, and courts have analyzed whether conduct can constitute anticipatory repudiation. *CITGO Petroleum Corp. v. Integrys Energy Servs., Inc.*, No. 10 C 4743, 2012 WL 2129402, at *11 (N.D. Ill. June 12, 2012) ("A party may repudiate by words or other conduct . . . ."); s*ee, e.g.*, *Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 889–92 (N.D. Ill. 2015) (finding plaintiffs did not have likelihood of success on anticipatory repudiation claim because defendants did not breach their duty to plaintiffs); *Clamage v. Dalen*, 957 F. Supp. 1037, 1039 (N.D. Ill. 1997) (dismissing defendant's counterclaim for alleging "no actions or statements of [plaintiff], apart from the filing of this lawsuit, to support his anticipatory breach action"); *Gaidas-Daimid Funeral Directors, Ltd. v. All. Funeral Holdings, Inc.*, 2019 WL 2510376, at *6 (Ill. App. Ct. 2019) (finding plaintiff's "statements and actions did not indicate a clear intent to repudiate the Non-Compete Agreement with defendants"). The Court concludes that Bonchon has sufficiently alleged that AAA's conduct signaled an intent to forgo the Agreement. (*See* Dkt. 14 ¶¶ 21, 29.) Whether AAA's failure to act—

---

[4] Most if not all of the other cases AAA cites in support of its argument that Bonchon has failed to state an anticipatory breach claim were also past the motion to dismiss stage. (Dkt. 15 at 8–9) (citing *Truman L. Flatt & Sons Co. v. Schupf*, 649 N.E.2d 990, 994 (Ill. App. Ct. 1995) (appeal from summary judgment motion); *Bituminous Cas. Corp. v. Com. Union Ins. Co.*, 652 N.E.2d 1192, 1197 (Ill. App. Ct. 1995) (appeal from summary judgment motion); *In re Marriage of Olson*, 528 N.E.2d 684, 686 (Ill. 1998) (appeal from motion for directed verdict)).

or its statements—actually rises to the level of anticipatory repudiation is an issue for summary judgment.

Contrary to AAA's argument, the fact that the performance deadline is unclear is not fatal to Bonchon's anticipatory repudiation claim. AAA provides no citation for its assertion that anticipatory repudiation claims require a fixed performance deadline, aside from referencing the definition of anticipatory repudiation stated in *Carpo Service Centers. v. A.P. Parts International, Inc.* (Dkt. 15 at 8) (quoting 2000 WL 12720, at *10 ("[T]here must be a definite and unequivocal manifestation of intention that the party will not render the promised performance when the *time fixed for it in the contract* arrives.") (emphasis added)). Courts, however, have considered anticipatory repudiation claims even when the contract did not specify a time for performance (and the court had to determine the reasonable time for performance). *See, e.g.*, *Yale Dev. Co. v. Aurora Pizza Hut, Inc.,* 420 N.E.2d 823, 824–25 (Ill App. Ct. 1981); *Wilmette Partners v. Hamel*, 594 N.E.2d 1177 (Ill. App. Ct. 1992). The factual issues surrounding the Agreement's incorporation of the Proposal and, by extension, the Agreement's intended performance period, further persuade the Court not to dismiss Bonchon's claim on this ground.

Finally, AAA argues that a plaintiff pleading anticipatory repudiation is required to show that the conditions of the Agreement could have been fulfilled absent repudiation. (Dkt. 15 at 9) (citing *Pope ex rel. Pope v. Economy Fire & Cas. Co.*, 779 N.E.2d 461, 466 (Ill. App. Ct. 2002)). If a defendant's performance under a contract was predicated on the plaintiff fulfilling certain conditions, then the plaintiff bringing an anticipatory repudiation claim must prove that those conditions could have been fulfilled. *Id.* (granting summary judgment because plaintiff could not prove that his insurance contract would cover his claim such that defendant insurance company, absent anticipatory repudiation, would still have a duty to defend the claim); *see also Yale Dev.*

13

*Co.*, 420 N.E.2d at 824–25 (reversing judgment against defendant on anticipatory repudiation claim because parties' real estate contract was predicated on plaintiff's obtaining a zoning charge, and plaintiff failed to do so); *Fox v. Admiral Ins. Co.*, No. 12 CV 8740, 2016 WL 3520145, at *5–6 (N.D. Ill. June 28, 2016) (distinguishing *Pope* because occurrence of post-trial activities was not a condition precedent that plaintiff needed to perform to hold insurer to its promise to defend).

The Court is unable to determine whether the Agreement contains conditions precedent at this time, and even if it did, Bonchon's allegations suffice for pleading performance of conditions precedent. First, as AAA implicitly recognizes, Bonchon's own potential obligation to fulfill conditions under the Agreement flows from the Agreement's potential incorporation of the Proposal. (Dkt. 15 at 6 n.1.) Because the Agreement's incorporation of the Proposal needs to be clarified, the Court declines to dismiss Bonchon's anticipatory repudiation claim for failing to allege that it met any requisite conditions. Second, Bonchon's allegation that "Bonchon has fully performed under the Agreement" suffices for the general pleading required under Federal Rule of Civil Procedure 9(c). (Dkt. 14 ¶ 34); *Byczek v. Boelter Companies, Inc.,* 264 F. Supp. 2d 720, 723 (N.D. Ill. 2003) (finding defendant's allegation that it "fully performed its obligations under the Agreement" was sufficient for pleading conditions precedent); *Goulding v. Osceola Gold, Inc.*, No. 16 C 4860, 2017 WL 690549, at *9 (N.D. Ill. Feb. 21, 2017) (finding that defendants' counterclaims and allegation that they performed the disputed contracts "in all material ways" were sufficient for pleading conditions precedent).

Without making any determinations about the success of Bonchon's claim, the Court concludes that Bonchon has adequately alleged a breach of contract claim under a theory of anticipatory repudiation.

### iii. Section 3.3, Damages

Apart from the sufficiency of Bonchon's allegations, AAA also argues that Bonchon has no damages available to it because Section 3.3 permits AAA to retain any advance payment following termination. (Dkt. 15 at 10–11.) Section 3.3 states, "In the event of termination, AAA shall be compensated for the Services performed through the date of termination in the amount of (a) any advance payment, (b) a prorated portion of the fees due, or (c) hourly fees for work performed by AAA or AAA's agents as of the date of termination, whichever is greater . . . ." (Dkt. 14-2 at 3.) Bonchon argues that its payment of the full Agreement price was not an advance payment, it was the total fee, and points out that "AAA will be compensated for Services *performed through the date of termination*." (Dkt. 18 at 13) (emphasis added).

The Court disagrees with AAA's interpretation of Section 3.3. The provision clearly specifies that payment is meant as "compensation for the Services performed." Although contract terms should be given their ordinary and accepted meaning, they should also be interpreted so that the contract is "'fair, customary, and such as prudent persons would naturally execute,' and is 'rational and probable.'" *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004) (quoting *Foxfield Realty, Inc. v. Kubala*, 678 N.E.2d 1060, 1063 (Ill. App. Ct. 1997)). It is not rational or probable to believe that Bonchon, a sophisticated party, would have agreed to a provision that would allow AAA to keep any amount of money paid in advance, regardless of the services rendered. Bonchon alleges that AAA essentially did not provide any of the services promised. (Dkt. 14 ¶¶ 17–26.) Bonchon's damages may not be the full fee amount, but the Court concludes that Bonchon has adequately pled damages for its breach of contract claim.

### d. Section 3.2.2, Opportunity to Cure

Finally, the Court will address AAA's argument that Bonchon's failure to comply with the Agreement's notice and cure provisions, Sections 3.2 and 3.2.2, forecloses its claim. This issue raises the question of whether these provisions should supersede Bonchon's common law rights when faced with anticipatory repudiation. *See Peoria Partners, LLC v. Mill Grp., Inc.*, No. 15 C 6680, 2015 WL 8989675, at *6 (N.D. Ill. Dec. 16, 2015); *see also Tilted Kilt Franchise Operating, LLC v. 1220, LLC*, No. 15-CV-10377, 2016 WL 4063172, at *6 (N.D. Ill. July 29, 2016); *Gleike Taxi Inc. v. Challenger CAB, LLC*, No. 13 CV 6715, 2016 WL 1450048, at *9 (N.D. Ill. Apr. 13, 2016). Anticipatory repudiation, like material breach, excuses the other party's performance under a contract. *Tower Invs., LLC*, 864 N.E.2d at 1032; *Mohanty*, 866 N.E.2d at 95. Whether Bonchon was bound to comply with the cure provision potentially depends on whether AAA anticipatorily repudiated the Agreement, and as stated above, the Court will not resolve this question at the motion to dismiss stage.

Additionally, the Court finds Bonchon has sufficiently alleged futility to justify non-compliance with the Agreement's cure provision for the purposes of AAA's 12(b)(6) motion. *See Gleike Tax Inc.*, 2016 WL 1450048, at *9 (declining to dismiss defendant's counterclaims for failure to comply with contract's notice and cure provisions, as defendants had alleged material breach and argued that compliance would be futile); *Peoria Partners, LLC*, 2015 WL 8989675, at *7 (noting "prevailing approach in other jurisdictions (and at least one leading treatise) is that a non-breaching party need not comply with a contractual notice and cure provision when the material breach is incurable"); *Tilted Kilt Franchise Operating, LLC*, 2016 WL 4063172, at *6 (finding that the issue of whether the breach alleged was material or incurable such that party's compliance with cure provision was excused need not be decided for the purposes of a 12(b)(6)

motion). According to Bonchon, it would have been futile to provide AAA with the opportunity to cure considering AAA's failure to timely perform, its response to Bonchon's requests, and the lack of time remaining in Bonchon's asserted performance period. (Dkt. 14 ¶ 28; Dkt. 18 at 10–11.)

Finally, although Bonchon does not make this argument, from the Court's own review of the allegations and the Agreement's notice and cure provisions, the Court cannot say that Bonchon necessarily failed to comply with the provision. The notice provision is arguably permissive, and says, "This Agreement *may* be terminated with written notice given 30 days in advance," before specifying other procedures for termination. (Dkt. 14-2 at 3.) The cure provision permits termination "if any party . . . breaches any of its material responsibilities or obligations under this Agreement, which breach is not remedied within ten (10) days from receipt of written notice of such breach." (*Id.*) Bonchon alleges that AAA refused to provide Bonchon the services it promised under the Agreement and Proposal, even after repeated requests. (Dkt. 14 ¶ 21.) It is reasonable to infer from these allegations that AAA breached a material obligation under the Agreement, Bonchon gave written notice of said breach, and AAA failed to remedy the breach. As Bonchon has adequately pled both anticipatory repudiation and futility, and its compliance with the cure provision is debatable, the Court denies AAA's motion to dismiss Bonchon's breach of contract claim on this ground.

## II.    Count II – Unjust Enrichment

The Court will now address Bonchon's unjust enrichment claim. AAA argues that this claim should be dismissed because there is an express contract and Bonchon explicitly incorporated its breach of contract allegations in support of its unjust enrichment claim. (Dkt. 15 at 11.) Under Illinois law, "[t]he theory of unjust enrichment is an equitable remedy based upon a

17

contract implied in law." *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. 2005) (citing *Nesby v. Country Mutual Ins. Co.*, 805 N.E.2d 241, 243 (Ill. 2004)). Unjust enrichment is appropriate only where there is no adequate remedy at law, and so it "is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and the defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013).

The Court finds that the Seventh Circuit's holding in *Cohen v. American Security Insurance Company* is dispositive here and accordingly grants AAA's motion to dismiss this claim. 735 F.3d 601. Although a plaintiff can plead claims in the alternative, the Seventh Circuit held that a plaintiff "may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment." *Id.* As AAA points out, Bonchon does just that. (Dkt. 14 ¶ 36) ("Bonchon repeats, reiterates, and realleges each and every allegation set forth in paragraphs 1-35 above . . . ."). Bonchon did not plead its unjust enrichment claim in the alternative according to the process laid out in *Cohen*. 735 F.3d at 615 ("A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense.").[5] Instead, Bonchon reaffirmed throughout its Amended Complaint that there is an express contract between the parties. (*See, e.g.*, Dkt. 14 ¶¶ 17–19, 21, 22, 29.) Bonchon cites to *Sullivan v. Alcatel-Lucent USA, Inc.*, which is contrary to the holding in *Cohen*. (Dkt. 18 at 14) (citing No. 12 C 7528, 2013 WL 228244, at *4 (N.D. Ill. Jan. 22, 2013)). But as AAA points out, *Cohen* was issued slightly after *Sullivan*, and the Seventh Circuit's holdings are binding on this Court. (Dkt. 18 at 9.) The Court therefore dismisses Bonchon's unjust enrichment claim without

---

[5] The Seventh Circuit has also repeated *Cohen*'s holding in more recent years as well. *See, e.g.*, *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021).

prejudice. The Court emphasizes the *Cohen* court's holding that unjust enrichment claims are only available where the parties do not have an express contract. 735 F.3d at 615. Thus, if Bonchon chooses to amend its unjust enrichment claim, it must specifically plead in the alternative that there is no express contract, and it cannot rely on any allegations pertaining to the Agreement for its unjust enrichment claim.

## Conclusion

For the foregoing reasons, AAA's motion to dismiss Bonchon's Amended Complaint, (Dkt. 15), is granted in part and denied in part. Bonchon's breach of contract claim may proceed, but its unjust enrichment claim is dismissed without prejudice. Bonchon may amend its Amended Complaint by April 19, 2024 .

Dated: 3/30/24

Honorable Nancy L. Maldonado
U.S. District Judge